UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUCCI AMERICA, INC.,<br><br>       Plaintiff,<br> -against-<br><br>FRONTLINE PROCESSING CORPORATION; WOODFOREST NATIONAL BANK; DURANGO MERCHANT SERVICES LLC d/b/a NATIONAL BANKCARD SYSTEMS OF DURANGO; ABC COMPANIES; and JOHN DOES,<br><br>       Defendants. | Civil Action No. 09-6925 (HB) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION UNDER FED. R. CIV. P. 12(b)(2)
<u>TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND FACTS......................................................................................................1

    A.    The Facts Regarding Frontline.....................................................................................1

    B.    The Facts Regarding WNB ..........................................................................................2

    C.    The Facts Regarding Durango ......................................................................................3

    D.    Defendants' Contacts With The Laurette Companies ..................................................3

II. ARGUMENT.........................................................................................................................4

    A.    The Exercise Of Personal Jurisdiction Over The Defendants
          Is Not Appropriate Under New York's Long-Arm Statute .........................................4

    B.    The Exercise Of Personal Jurisdiction Over The
          Defendants Does Not Comport With The Requisites Of Due Process........................7

        1.    Defendants' Acts Did Not Occur In New York And
            Defendants Have Not Purposefully Availed Themselves
            Of The Privilege Of Conducting Business In New York ...........................7

        2.    Traditional Notions Of Substantial Justice
            Weigh Against The Exercise Of Personal Jurisdiction..............................8

            a.    The Burden Of Litigating In New York Is Considerable,
                And Weighs Against The Exercise Of Personal Jurisdiction ..........8

            b.    New York Has A Lesser Interest In Litigating
                This Action Than The States Where The Exercise
                Of Personal Jurisdiction Was Reasonably Foreseeable...................9

            c.    Gucci's Interests Are Better Served By A Forum
                Where The Relevant Records, Files, And Witnesses
                Are Located, And Where The Relevant Actions Occurred ...........10

            d.    The Interstate Judicial System's Interest In Obtaining
                The Most Efficient Resolution Of The Controversy
                Weighs Against Thise Court's Exercise Of Personal
                Jurisdiction.....................................................................................10

            e.    The Shared Interest Of The States In Furthering
                Substantive Social Policies Weighs Against
                This Court's Exercise Of Personal Jurisdiction............................10

IV. CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

Page

**Cases**

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2nd Cir. 1997)................................5, 6

*Carlson v. Cuevas*, 932 F.Supp. 76 (S.D.N.Y. 1996) ....................................................... 6

*Chaiken v. VV Pub. Corp.*, 119 F.3d 1018 (2nd Cir. 1997).............................................7, 8

*Chloe v. Queen Bee of Beverly Hills, LLC*, 630 F.Supp.2d 350 ...................................9, 10

*Gucci America, Inc., et al. v. Laurette Company, Inc., et al.*, 08 CIV 5065 (LAK).....................3-4

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567
   (2d Cir. 1996).................................................................................................7, 8, 10

*Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100
   (2nd Cir. 2006)..........................................................................................................5

**Statutes**

N.Y.C.P.L.R. § 302(a) ................................................................................................4, 5, 6

I. **INTRODUCTION**

The United States District Court for the Southern District of New York lacks personal jurisdiction over defendants, Frontline Processing Corporation ("Frontline"), Woodforest National Bank ("WNB"), and Durango Merchant Services LLC ("Durango"). The exercise of personal jurisdiction over these defendants is not appropriate under New York's long-arm statute, nor does the exercise of such jurisdiction comport with the requirements of due process.

II. **BACKGROUND FACTS**

In this action alleging trademark infringement and counterfeiting, Gucci seeks to extend liability to a degree never contemplated by law. Thus, Gucci seeks to impose liability on Frontline, WNB, and Durango -- companies not alleged to have manufactured, advertised or sold the purportedly infringing and counterfeit handbags -- *on the sole basis* that these defendants processed the credit card transactions between the Laurette Company, Inc. (which operated the website www.TheBagAddiction.com) and its customers, *after* the completion of such sales.

A. **The Facts Regarding Frontline**

Frontline is a Nevada corporation with its principal place of business in Bozeman, Montana. It has never had an office or other business premises in New York. (accompanying affidavit of Christopher Kittler dated October 29, 2009, the "Kittler Affid", ¶¶ 3,4). Frontline has never had any employee, shareholder, officer, or director in New York. (Kittler Affid., ¶ 5), and does not own, use, or possess real property in New York. (Kittler Affid, ¶ 8). Frontline does not conduct any direct marketing in New York, nor does it conduct business, or actively solicit business, in New York. (Kittler Affid, ¶¶ 7, 6). In fact, since its inception in 1998, Frontline has worked with over 7,400 businesses. Of these, fewer than 24 had New York addresses. Currently, Frontline works with only 7 businesses that have New York addresses. Frontline's income derived from the processing of payments to merchants with New York addresses

- 1 -

represents only approximately one percent of Frontline's revenue. (Kittler Affid, ¶ 10). Because it has access to the ACH system, Frontline has a banking relationship with HSBC Bank NA, which is only one of several money center banks with access to the ACH system. All credit card transactions, and millions of merchants, utilize the ACH system. Frontline does not receive any revenue from HSBC Bank NA. (Kittler Affid, ¶ 13).

Frontline is not aware of having transacted any direct business with MasterCard, American Express, or MCCS in New York, and Frontline derives no revenue from Master Card, American Express, or MCCS. (Kittler Affid, ¶ 12). Frontline's website is not targeted to New York, nor is it specifically structured to facilitate the transaction of business in New York. It is a passive website, merely conveying information, universally, concerning Frontline's business and activities. (Kittler Affid, ¶ 14).

### B. The Facts Regarding WNB

WNB is a bank organized and existing under the laws of the United States. Its principal place of business is in The Woodlands, Texas. WNB has no office in New York, and has never had an office or business location in New York. (accompanying declaration of Charles A. Vernon, the "Vernon Decl", dated October 30, 2009, ¶¶ 2,3). WNB is not licensed to do business in New York. (Vernon Decl, ¶ 4). WNB has never had an employee, owner, officer or director located in New York. (Vernon Decl, ¶ 5). WNB does not own use or possess any real property in New York. (Vernon Decl, ¶ 6), and WNB does not conduct business or actively solicit business in New York. (Vernon Decl, ¶ 7).

WNB's merchant service provider, MCCS, has an office only in Texas, and no office in New York. (Vernon Decl, ¶ 8). WNB, through MCCS, contracts for processing services for credit card transactions for over 35,000 clients. Less than one-half of 1% of WNB's business is generated from clients located in New York. (Vernon Decl, ¶ 9). The website that covers

information about WNB's personal and business banking services, is not directed to clients in New York because WNB has no branch there. A separate entity Woodforest Bank can offer services in New York, but it is not involved in this case and does not provide merchant bankcard services — the services at issue in this case. (Vernon Decl, ¶ 10).

In terms of *purposeful* contacts with New York, even the sales that the Laurette Cmpany me through the www.TheBagAddiction.com website do not establish contacts by WNB with this State. WNB had no knowledge as to whether and what extent any transactions were from residents of New York. (Vernon Decl,¶ 13).

### C. The Facts Regarding Durango

Durango is a Wyoming limited liability company with its principal place of business in Durango, Colorado. Durango, which has only five employees, acts as a referral service, or broker, to bridge retailer/merchants with entities that offer credit card processing services. (accompanying affidavit of Shane Kairalla, the "Kairalla Affid", dated October 30, 2009, ¶¶ 5-6). Durango has no office or other business premises in New York. (Kairalla Affid, ¶¶ 7,10), has no employees in New York, and does not own or possess real property in New York. (Kairalla Affid, ¶¶ 14-15). Durango does not maintain any assets or bank accounts within New York. (Kairalla Affid, ¶¶ 12-13), and its website is neither targeted to New York, nor structured to facilitate the transaction of business in New York. Since its recent inception in 2004 (Kairalla Affid, ¶ 4), Durango's income derived from the processing of payments to merchants with New York addresses represents less than one percent of Durango's revenue. (Kairalla Affid, ¶ 11).

### D. Defendants' Contacts With The Laurette Companies

Gucci's claims against the moving defendants relate to the merchant credit card services that they provided to the Laurette Company. In *Gucci America, Inc., et al. v. Laurette Company, Inc., et al.*, 08 CIV 5065 (LAK), Gucci sued the Laurette Company, Inc. and its

principals Jennifer Kirk and Patrick Kirk (collectively "LauretteCo") for alleged counterfeiting and trademark infringement via sales over the internet through their website, "www.TheBagAddiction.com" (Complaint ¶¶ 5-6). All of the defendants' transactions with LauretteCo took place outside New York. None of these defendants engaged in any business or commercial dealings in New York, or entered into any contractual relationships with LauretteCo or anyone associated with LauretteCo or "TheBagAddiction.com" in New York. (Kittler Aff. ¶¶ 15-17, Vernon Decl. ¶¶ 11-12.)

### III. ARGUMENT

#### A. The Exercise Of Personal Jurisdiction Over The Defendants Is Not Appropriate Under New York's Long-Arm Statute

Gucci asserts (in ¶ 21 of its Complaint) that personal jurisdiction is appropriate here pursuant to N.Y.C.P.L.R. § 302(a) which provides that:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary...who in person or through an agent:
>
> 1. transacts any business *within* the state or contracts anywhere to supply goods or services in the state; or...
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property *within* the state...if he
>
>    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
>    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;...; or
>
> 4. owns uses or possesses any real property situated *within* the state.

(emphasis added).

First, to assert jurisdiction under section § 302(a)(1), two requirements must be met: (1) a defendant must have transacted business within New York; and (2) the claim asserted must arise from that business activity. *Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2nd Cir. 2006). A claim "arise[s] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted." *Id.* (internal quotations and citations omitted). A "connection that is 'merely coincidental' is insufficient to support jurisdiction." *Id.*

Here, §302(a)(1) does not confer personal jurisdiction because the claims asserted by Gucci over the moving defendants did not arise out of business activities conducted *by the defendants* in New York. The defendants are accused of having provided credit card processing services to LauretteCo. However, the defendants -- each located *outside* New York -- had no business or commercial dealings, or contractual relationships with LauretteCo *in New York*. Indeed, no "substantial relationship" exists between any activities by the defendants in New York and Gucci's claims. Although LauretteCo may have sold products to customers residing in New York, the defendants were not involved in those sales. The defendants' only involvement was in the processing of credits and debits from LauretteCo's completed sales transactions -- and those activities were conducted by defendants entirely *outside* of New York. Thus, §302(a)(1) cannot confer personal jurisdiction because the claims asserted by Gucci do not arise out of any alleged business activities conducted by the moving defendants in New York.

Second, §302(a)(2) does not confer personal jurisdiction. These defendants committed no allegedly tortious acts *within* New York, as the acts allegedly giving rise to Gucci's lawsuit -- *i.e.*, the processing of credit transactions -- were not performed by persons *physically present in* New York. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 29 (2nd Cir. 1997); *Carlson v.*

- 5 -

*Cuevas,* 932 F.Supp. 76, 80 (S.D.N.Y. 1996).

Third, §§302(a)(3)(i) and (ii) do not confer personal jurisdiction either. For this Court to exercise personal jurisdiction pursuant to §302(a)(3)(i), Gucci must show that each defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, *in New York*. To exercise personal jurisdiction under §302(a)(3)(ii) Gucci must show that each defendant committed a tortious act without the state which it expected or should reasonably expect to have consequences in the state, and derives substantial revenue from interstate or international commerce. Gucci does not plead any facts sufficient to make these showings. While Gucci identifies several "relationships" that certain defendants purportedly have with entities that maintain their principal places of business in New York (Complaint ¶ 22), Gucci does *not* allege that any of these relationships demonstrate a persistent course of conduct, or the regular conduct of business, by any defendant in New York.

Frontline does not solicit business in New York or derive substantial revenue from services in New York. While, Frontline has processed credit transactions for *thousands* of merchants, of these fewer than twenty-four (and only seven currently), have addresses in New York; and Frontline derives only approximately 1% of its revenue from processing merchants having New York addresses. Similarly, WNB neither solicits business in, nor derives substantial revenue from services in, New York. Through its merchant service provider, WNB provides merchant bankcard services for over 35,000 clients. Less than 1% of WNB's business revenue is generated from clients in New York. Likewise, Durango does not solicit business or derive substantial revenue from sales in New York. Durango's income from processing payments to merchants with New York addresses represents less than 1% of Durango's revenue.

None of these defendants expected (or should reasonably have expected) their acts to

have consequences in New York. The services the defendants provided to LauretteCo were services for a California business. The fact that LauretteCo knew that certain sales made on its website were to New York customers does not establish tortious acts by these defendants that were expected to have consequences in New York. These defendants were not specifically aware of LauretteCo's sales demographics, and the Complaint does not allege that they were. Rather, the Complaint alleges only that these defendants were involved in processing of credit card transactions *after the fact*; and the defendants had no way of knowing where the customers whose credit card transactions they processed were located. If Gucci's theory of jurisdiction were to be adopted, then merely providing credit card services to a California merchant would subject a financial company to jurisdiction in any state where that merchant makes sales, regardless of any contacts between the financial company and the forum state.

### B. The Exercise Of Personal Jurisdiction Over The Defendants Does Not Comport With The Requisites Of Due Process

The due process test for personal jurisdiction has two components: (1) the "minimum contacts" inquiry; and (2) the "reasonableness" inquiry. *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2nd Cir. 1996). To apply this test, the Court first determines whether each defendant has sufficient contacts with New York to justify the exercise of personal jurisdiction, and then determines if the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Id.* at 568.

#### 1. Defendants' Acts Did Not Occur In New York And Defendants Have Not Purposefully Availed Themselves Of The Privilege Of Conducting Business In New York

To establish the minimum contacts necessary to exercise specific personal jurisdiction, Gucci must show that: (a) Gucci's claims arise out of or relate to each defendant's contacts with New York; and (b) each defendant "purposefully availed" itself of the privilege of doing business in New York, and each defendant could foresee being "haled into court" there. *Chaiken*

*v. VV Pub. Corp.*, 119 F.3d 1018, 1028 (2nd Cir. 1997). Gucci can't make this showing because the asserted claims do not arise from any business or acts of the defendants within New York. The defendants did not engage in any business or commercial dealings, or enter into any contractual relationships, with LauretteCo or TheBagAddiction.com, in *New York*. The defendants' involvement was in the processing of credits and debits from completed sales transactions — and those activities were undertaken entirely outside of New York.

Moreover, the defendants did not purposefully avail themselves of the privilege of conducting business in New York, nor reasonably foresaw being haled into court in New York. Although the LauretteCo may have sold products to New York customers, the defendants were not involved in those sales. In processing credit transactions, the defendants were unaware of the location of the customers who had made the credit card purchases. The defendants' credit processing services were not performed in New York.

### 2. Traditional Notions Of Substantial Justice Weigh Against The Exercise Of Personal Jurisdiction

The Court "cannot subject a person to its authority where the maintenance of the suit offends 'traditional notions of fair play and substantial justice.'" *Metropolitan Life*, 84 F.3d at 568. This *reasonableness* analysis requires evaluation of: (a) the burden that the exercise of jurisdiction will impose on the defendants; (b) the interests of New York in adjudicating the case; (c) a plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (e) the shared interest of the states in furthering substantive social policies. *Id.* Balancing these factors weighs against the exercise of personal jurisdiction over these defendants.

#### a. The Burden Of Litigating In New York Is Considerable, And Weighs Against The Exercise Of Personal Jurisdiction

The burdens on the defendants of litigating in New York are considerable. Frontline is a

Nevada corporation with its principal place of business in Montana. WNB is a bank with its principal place of business in Texas. Durango is a Wyoming corporation with its principal place of business in Colorado. The defendants' records, files, and witnesses with information about the litigation are not located in New York. The defendants' interactions with the alleged actual infringer, LauretteCo, did not occur in New York.

Additionally, although the conveniences of modern communication and travel have eased certain burdens of interstate litigation, having a trial and hearings in New York for Montana, Texas, and Colorado defendants would still impose significant burdens. The time and costs of travel, and the lost business time for Montana, Texas and Colorado businesspersons to be in New York, are obvious and considerable. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 630 F.Supp.2d 350, 354, n. 2 (S.D. N.Y. 2009). The costs of litigating in New York -- including retention of local counsel, transportation, transporting relevant files, documents, and witnesses, and accommodations -- are substantial. They significantly outweigh the costs of litigating in a forum, such as Montana, Texas, or Colorado, where certain defendants have substantial contacts and reasonably would expect to be subject to personal jurisdiction.

      b.    **New York Has A Lesser Interest In This Action Than The States Where Personal Jurisdiction Was Reasonably Foreseeable**

As recognized by the Southern District of New York, "there is no obvious reason why New York has a greater interest in hearing trademark actions than other federal and state courts." *Chloe*, 630 F.Supp.2d at 354, n. 2. New York has no greater interest in seeing that its consumers and retailers are not subject to alleged counterfeiting or trademark infringement than would Montana, Texas, and Colorado. Here, Montana, Texas, and Colorado have a greater interest than New York in seeing that their resident corporations do not engage in counterfeiting or trademark infringement.

### c. Gucci's Interests Are Better Served By A Forum Where The Relevant Records, Files, And Witnesses Are Located, And Where The Relevant Actions Occurred

Aside from any connections that Gucci might have to New York, the fact is that all of the records, files, and witnesses relevant to this action are located outside New York. Moreover, each defendant's activities related to this litigation occurred outside New York. Obtaining convenient and effective relief counsels that Gucci go where the records, files, witnesses, and events at issue in this litigation are located or occurred. That is not New York. Moreover, Gucci's interest in stopping the sale of infringing items is not unique to this jurisdiction. The Lanham Act, upon which Gucci principally predicate its claims, is the law of the United States, and Gucci will always have some forum in which to enforce its rights. *See Chloe*, 630 F.Supp.2d at 356. This is not a choice between litigation in New York or nowhere.

### d. The Interstate Judicial System's Interest In Obtaining The Most Efficient Resolution Of The Controversy Weighs Against This Court's Exercise Of Personal Jurisdiction

In "evaluating this factor, courts generally consider where witnesses and evidence are likely to be located." *Metropolitan Life*, 84 F.3d at 574. The defendants' records, files, or witnesses with information relevant to this litigation are not located in New York. None of the defendants' interactions with the LauretteCo, including its principals, occurred in New York.

### e. The Shared Interest Of The States In Furthering Substantive Social Policies Weighs Against This Court's Exercise Of Personal Jurisdiction

Gucci's interests can be pursued in numerous jurisdictions possessing far more substantial contacts with the present action than New York, and where the defendants might reasonably have expected to be subject to personal jurisdiction. Although no state in particular possesses a heightened interest in litigating trademark disputes, the interests of judicial economy

and efficiency in the resolution of disputes, and interests in bolstering the principles behind personal jurisdiction, are best served if this litigation is pursued in a forum other than New York.

## IV. CONCLUSION

Because this Court lacks personal jurisdiction over defendants Frontline, WNB, and Durango, Gucci's Complaint must be dismissed.

Dated: New York, NY
       October 30, 2009

          Respectfully submitted,

OTTERBOURG, STEINDLER,
 HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, NY 10169

By   /s/ *Stanley L. Lane, Jr.*
      Stanley L. Lane, Jr. (SL 8400)
      Tel:  212.661.9100
      E-mail: slane@oshr.com

- and -

CROWLEY FLECK PLLP
490 N 31st Street
Suite 500 TW2
Billings, MT 59101
Tel:  406-252-3441
Herbert I. Pierce III
Jeffery J. Oven
Christopher C. Stoneback
G. Trenton Hooper
E-mail: fpierce@crowleyfleck.com
        joven@crowleyfleck.com
        cstoneback@crowleyfleck.com
        thooper@crowleyfleck.com

*Attorneys for Defendant*
*Frontline Processing Corporation*

Law Offices of Todd Wengrovsky, PLLC.
285 Southfield Road
Box 585
Calverton, NY 11933
*Attorneys for Defendant Durango*
*Merchant Services LLC d/b/a National*
*Bankcard Systems of Durango*

By   /s/ *Todd Wengrovsky*
      Todd Wengrovsky (TW 4823)
      Tel:  631.727.3400
      E-mail:Contact@TWlegal.com

LERNER, DAVID, LITTENBERG,
 KRUMHOLZ & MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090
*Attorneys for Defendant*
*Woodforest National Bank*

By   /s/ *Charles P. Kennedy*
      Charles P. Kennedy (CK 9917)
      Tel:  908.654.5000
        E-mail: ckennedy@ldlkm.com